

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2005 JUN -2 AM 10: 01

LORETTA G. WHYTE
CLERK

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **TERRY BAGNERIS** | **CIVIL ACTION** |
| **VERSUS** | **NO.  04-3256** |
| **N. BURL CAIN, WARDEN LOUISIANA STATE PENITENTIARY** | **SECTION "A" (2)** |

## REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.  Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary.  See 28 U.S.C. § 2254(e)(2).[1]  For the following reasons, I recommend that

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination. Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.  28 U.S.C. § 2254(e)(2)(B).



___ Fee_____
___ Process_____
X  /Dktd_____
✓  CtRmDep_____
___ Doc. No _____

the instant petition for habeas corpus relief be **DENIED** and the petition **DISMISSED**

**WITH PREJUDICE** as time-barred.   Alternatively, the petition may be dismissed

without prejudice for failure to exhaust state court remedies.

I.      STATE COURT PROCEDURAL BACKGROUND

The petitioner, Terry Bagneris, is incarcerated in the Louisiana State Penitentiary

in Angola, Louisiana.[2]   On October 15, 1999, Bagneris was charged by bill of

information in Orleans Parish with armed robbery and for being a felon in possession of

a weapon.[3]   The Louisiana Fourth Circuit Court of Appeal summarized the facts of the

case as follows:

> At approximately 7:00 p.m. on 18 August 1999, police officers received
> a call concerning a carjacking in the 3300 block of Claremont Street.  Officers
> responding to the call interviewed the victim, Brandon Allen, who gave a
> description of the robber.  Another witness to the carjacking gave a similar
> description.  Later that night, the car, absent its wheels and radio, was recovered
> on Perdido Street.  Based upon a telephone call, the defendant, Terry Bagneris,
> became a suspect.  Officers compiled a photographic lineup containing his
> picture.  The officers showed the lineup to Allen, who chose Bagneris' photo and
> positively identified him as the man who took the car at gunpoint.
> Allen testified he had parked his mother's car in the 3300 block of
> Claremont and was standing nearby, talking with his friend's father.  While they
> were talking, they saw an Acura Legend with dark windows drive by them and
> then turn the corner.  Soon thereafter, Allen noticed a man he positively identified
> as the defendant walking toward him from that corner.  As the defendant got
> closer, he pulled a gun from his waistband.  Allen testified the defendant cocked
> the gun, placed it against Allen's chest, and ordered Allen to give him the car
> keys, which were in Allen's hand.  Allen complied, and the defendant ordered
> him and his friend's father to run to the back of the alley.  As they complied with

---

[2]Rec. Doc. No. 2, Petition.

[3]St. Rec. Vol. 1 of 5, Bill of Information, 10/15/99.

2

this order, Allen saw the Acura drive up.  The Acura remained at the scene until the defendant got Allen's mother's car started, and then both cars drove from the scene.  Allen called the police, and officers responded within fifteen minutes. Allen testified he described the robber as being approximately 6' tall and weighing 190 pounds, with a gold front tooth and a scar on his head.  He testified that a few days later, he and his mother viewed a lineup, and he chose the defendant's photograph.

On cross-examination, Allen admitted the scar on the defendant's head was visible in court, and he was unsure if he mentioned the scar when he initially described the perpetrator.  He also admitted the defendant's present weight (240 pounds) was much more than he estimated on the date of the offense, and he further admitted that at a pretrial hearing he had estimated the weight of the offender at 160 pounds.  He maintained, however, that the defendant was the man who robbed him.

Lechia Allen, the victim's mother, testified she owned the car taken from the victim.  She testified she had given only the victim permission to use the car that evening.   She stated she was with the victim when he identified the defendant's photo, and the victim chose the photo with no hesitation.

The defense called only one witness, an officer who had earlier testified for the State.  The officer stated he did not recall the victim's having mentioned that the robber had a scar on his head.  In addition, the parties stipulated that the police report did not mention a scar.

State v. Bagneris, 804 So.2d 831, 832-33 (La. App. 4th Cir. 2001); State Record Volume

3 of 5, Fourth Circuit Opinion, 2001-KA-0910, p. 1-2, December 19, 2001.

Bagneris was tried on the armed robbery count before a six-person jury on June

22, 2000 and was found guilty.[4]  Thereafter, on July 17, 2000, the State filed a multiple

---

[4]St. Rec. Vol. 1 of 5, Trial Minutes, 6/22/00; St. Rec. Vol. 2 of 5, Trial Transcript, 6/22/00; St. Rec. Vol. 3 of 5, Verdict of the Jury, 6/22/00.

offender bill charging Bagneris as a third offender.[5]  On October 30, 2000, the State also entered a nolle prosequi as to the felon in possession of a weapon charge.[6]

At a hearing held on January 19, 2001, the state trial court sentenced Bagneris as a multiple offender to serve a term of life imprisonment without benefit of parole, probation or suspension of sentence.[7]  The court also denied Bagneris's motion to reconsider that sentence.[8]

On direct appeal, Bagneris's counsel raised one ground for relief alleging that the trial court erred when it failed to admonish the jury after certain hearsay testimony of a police officer was presented at trial.[9]  On December 19, 2001, the Louisiana Fourth Circuit affirmed Bagneris's conviction finding that the trial court did not err, and even if it had, the error was harmless.[10]

---

[5]St. Rec. Vol. 2 of 5, Multiple Offender Bill, 7/17/00; St. Rec. Vol. 1 of 5, Minute Entry, 7/18/00.

[6]St. Rec. Vol. 1 of 5, Bill of Information (notation dated 10/30/00), 10/15/99;Minute Entry, 10/30/00.

[7]St. Rec. Vol. 1 of 5, Multiple Bill Hearing Minutes, 1/19/01; St. Rec. Vol. 3 of 5, Multiple Bill Hearing Transcript, 1/19/01.

[8]St. Rec. Vol. 1 of 5, Multiple Bill Hearing Minutes, 1/19/01; St. Rec. Vol. 2 of 5, Motion to Reconsider Sentence, 1/19/01;

[9]St. Rec. Vol. 3 of 5, Appeal Brief, 2001-KA-0910, 6/28/01.

[10]State v. Bagneris, 804 So.2d at 831; St. Rec. Vol. 3 of 5, 4th Cir. Opinion, 2001-KA-0910, 12/19/01.

4

Thereafter, Bagneris's counsel filed a writ application in the Louisiana Supreme Court on January 18, 2002, raising two grounds for relief:[11] (1) The hearsay rule and the Confrontation Clause of the Constitution were violated by the admission of the police officer's testimony, and the trial court's failure to admonish the jury was prejudicial. (2) The appellate court confused the harmless error and sufficiency of the evidence standards when addressing the impact of the hearsay on the outcome of trial.   The Louisiana Supreme Court denied the application without reasons on October 25, 2002.[12]

Bagneris's conviction became final 90 days later, January 23, 2003, when he did not file a writ application in the United States Supreme Court. Ott v. Johnson, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)), cert. denied, 529 U.S. 1099 (2000); U.S. S. Ct. Rule 13(1).

About three months later, on April 28, 2003, Bagneris filed a pro se application for post-conviction relief raising four grounds:[13] (1) Counsel was ineffective when he failed to (a) adequately investigate the State's evidence prior to trial; (b) present a defense of mistaken identification and assure that the jury was properly charged on

---

[11]St. Rec. Vol. 5 of 5, La. S. Ct. Writ Application, 02-K-0191, p. 3, 1/18/02; St. Rec. Vol. 1 of 5, La. S. Ct. Letter, 2002-K-191, 1/22/02.

[12]State v. Bagneris, 827 So.2d 1169 (La. 2002); St. Rec. Vol. 5 of 5, La. S. Ct. Order, 2002-K-0191, 10/25/02.

[13]St. Rec. Vol. 2 of 5, Application for Post Conviction Relief, 4/28/03.

mistaken identification; (c) move for a mistrial; (d) develop a reasonable trial strategy; (e) call defense witnesses; (f) investigate or call any alibi witnesses; (g) allow petitioner to testify; (h) seek writs to the appeal court and/or preserve objectionable issues for appeal. (2) Petitioner was illegally seized in violation of the Fourth Amendment when he was taken involuntarily and without probable cause to the police station for questioning, and in connection with this seizure his counsel was ineffective for failure to (a) object to his illegal arrest; (b) object to his confession (c) object to the use of the co-defendant's statements; and (d) preserve these errors for direct appeal. (3) His constitutional rights were violated when the trial court did not advise him during the multiple bill hearing of his right to remain silent and did not compel the State to meet its burden of proof, and in connection with the multiple bill hearing his counsel failed to object to the presentence investigation report, which led to his sentencing as a multiple offender.  (4) The cumulative errors rendered the trial fundamentally unfair for lack of due process and equal protection.

On May 7, 2003, the state trial court denied the application, finding that the claims of ineffective assistance of counsel and of cumulative errors were without merit, the claim of false arrest was procedurally defaulted pursuant to La. Code Crim. P. art. 930.4 and the claim challenging the multiple offender hearing was procedurally barred

6

pursuant to La. Code Crim. P. art. 930.3 and <u>State ex rel. Melinie v. State</u>, 665 So.2d 1172 (La. 1996).[14]

On June 4, 2003, Bagneris filed a writ application in the Louisiana Fourth Circuit seeking review of the following claims:[15]  (1) Counsel was ineffective when he failed to (a) adequately investigate the State's evidence prior to trial; (b) present a defense of mistaken identification and assure that the jury was properly charged on mistaken identification; (c) develop a reasonable trial strategy; (d) investigate or call any alibi witnesses; and (e) allow petitioner to testify.  (2) Petitioner was illegally arrested in violation of the Fourth Amendment, and his counsel was ineffective for failure to object to his illegal arrest to preserve the issue for direct appeal.  (3) He was improperly adjudicated a multiple offender because the State failed to meet its burden of proof, and his counsel failed to object to the presentence investigation report which led to his sentencing as a multiple offender. (4) The cumulative errors rendered the trial fundamentally unfair for lack of due process and equal protection.  The appellate court denied the writ application on June 18, 2003 finding no error in the trial court's ruling.[16]

---

[14]St. Rec. Vol. 1 of 5, Trial Court Judgment, 5/7/03.

[15]St. Rec. Vol. 4 of 5, 4th Cir. Writ Application, 2003-K-0998, 6/4/03.

[16]St. Rec. Vol. 4 of 5, 4th Cir. Order, 2003-K-0998, 6/18/03.

On July 23, 2003, Bagneris filed an untimely[17] pro se writ application in the Louisiana Supreme Court seeking review of the following claims:[18] (1) Counsel was ineffective when he failed to (a) adequately investigate the State's evidence prior to trial; (b) present a defense of mistaken identification; (c) investigate and call alibi witnesses; and (d) allow petitioner to testify. (2) Petitioner was illegally arrested in violation of the Fourth Amendment. (3) He was improperly adjudicated a multiple offender because the State failed to meet its burden of proof, and counsel failed to object to the presentence investigation report, which led to his sentencing as a multiple offender. (4) The cumulative errors rendered the trial fundamentally unfair for lack of due process and equal protection. The Louisiana Supreme Court denied the application without reasons on August 20, 2004.[19]

## II.   FEDERAL HABEAS PETITION

On January 12, 2005, Bagneris filed a petition for federal habeas corpus relief seeking relief on the following grounds:[20] (1)  The petitioner's constitutional rights were violated when the state trial court refused to admonish the jury regarding the introduction

---

[17]La. Code Crim. P. art. 922(C); La. S. Ct. R. X§5(a).

[18]St. Rec. Vol. 5 of 5, La. S. Ct. Writ Application, 03-KH-2041, 7/23/03; St. Rec. Vol. 1 of 5, La. S. Ct. Letter, 2003-KH-2041, 7/23/03.

[19]State ex rel. Bagneris v. State, 882 So.2d 561 (La. 2004); St. Rec. Vol. 5 of 5, La. S. Ct. Order, 2003-KH-2041, 8/20/04.

[20]Rec. Doc. No. 2, Petition and Memorandum in Support.

of prejudicial indirect hearsay testimony.  (2) Petitioner was denied effective assistance of counsel when counsel failed to (a) adequately investigate the State's evidence prior to trial; (b) present a defense of mistaken identification and insure the jury was properly charged on the law related to mistaken identification; (c) move for a mistrial; (d) develop a reasonable trial strategy; (e) call defense witnesses; (f) investigate and call any alibi witnesses; (g) allow petitioner to testify; and (h) seek writs to the appeal court and/or preserve objectionable issues for appeal.  (3) Petitioner was illegally seized in violation of the Fourth Amendment when he was taken involuntarily and without probable cause to the police station for questioning, and his counsel was ineffective for failure to object to his illegal arrest, confession and the co-defendant's statement and to preserve these errors for direct appeal.  (4) His constitutional rights were violated when the trial court did not advise him during the multiple bill hearing of his right to remain silent, the court failed to compel the State to meet its burden of proof, and his counsel failed to object to the presentence investigation report which led to his sentencing as a multiple offender. (5) The cumulative errors rendered the trial fundamentally unfair for lack of due process and equal protection.

The State responded to the petition in part by suggesting that Bagneris's federal petition "appears" to be timely.[21]  However, the State bases this tentative statement on

---

[21]Rec. Doc. No. 8.

an erroneous application of the AEDPA tolling provisions.  The State does not address

exhaustion of state court remedies with respect to all of Bagneris's claims.  It also

contends that Bagneris's false arrest and multiple offender hearing challenges are <u>not</u>

exhausted because the claims were procedurally barred.  The State also addresses the

merits of Bagneris's other claims.

III.    <u>STANDARDS OF REVIEW</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L.

No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation,

including 28 U.S.C. § 2254.  The AEDPA went into effect on April 24, 1996[22] and

applies to habeas petitions filed after that date.  <u>Flanagan v. Johnson</u>, 154 F.3d 196, 198

(5th Cir. 1998) (citing <u>Lindh v. Murphy</u>, 521 U.S. 320 (1997)).  The AEDPA therefore

applies to Bagneris's petition, which, for reasons discussed below, is deemed filed in this

court on November 19, 2004.[23]

---

[22]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  <u>United States v. Sherrod</u>, 964 F.2d 1501, 1505 (5th Cir. 1992).

[23]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se.  Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. <u>Coleman v. Johnson</u>, 184 F.3d 398, 401 (5th Cir. 1999), <u>cert. denied</u>, 529 U.S. 1057 (2000); <u>Spotville v. Cain</u>, 149 F.3d 374, 378 (5th Cir. 1998); <u>Cooper v. Brookshire</u>, 70 F.3d 377, 379 (5th Cir. 1995). The clerk of court filed Bagneris's petition on January 12, 2005, the date on which the filing fee was paid. Bagneris, however, signed the petition on November 19, 2004, which is the earliest date he could have submitted it to prison officials for mailing.  The fact that he paid the filing fee on a later date does not alter the application of

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claims raised by the petitioner were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

For the following reasons, I find that Bagneris has not exhausted his state court remedies with respect to several of his claims that are not in procedural default, but that his petition is not timely filed under the AEDPA and must be dismissed with prejudice for that reason.

## IV.   EXHAUSTION OF STATE COURT REMEDIES

The State has raised failure to exhaust as a defense in the context of Bagneris's procedurally defaulted claims.  However, Bagneris has failed to present several of his claims to the Louisiana Supreme Court and therefore has not exhausted state court remedies of claims not in procedural default.

"A fundamental prerequisite to federal habeas relief under § 2254 is the exhaustion of all claims in state court prior to requesting federal collateral relief." Whitehead v. Johnson, 157 F.3d 384, 387 (5th Cir. 1998) (citing Rose v. Lundy, 455

---

the federal mailbox rule to his pro se petition.  See Cousin v. Lensing, 310 F.3d 843, (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing Spotville, 149 F.3d at 374).

U.S. 509, 519-20 (1982)); <u>accord</u> <u>Preiser v. Rodriguez</u>, 411 U.S. 475, 500 (1973); <u>Nobles</u>, 127 F.3d at 419.  "A federal habeas petition should be dismissed if state remedies have not been exhausted as to <u>all</u> of the federal court claims." <u>Whitehead</u>, 157 F.3d at 387 (citing 28 U.S.C. § 2254(b)(1)(A); <u>Rose</u>, 455 U.S. at 519-20) (emphasis added).

"The exhaustion requirement is satisfied when the substance of the federal habeas claim has been fairly presented to the <u>highest</u> state court." <u>Id.</u> (citing <u>Picard v. Connor</u>, 404 U.S. 270, 275-78 (1971)) (emphasis added).  "State prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," including discretionary review when that review is part of the State's ordinary appellate review procedures. <u>O'Sullivan</u>, 526 U.S. at 845; <u>accord</u> <u>Duncan v. Walker</u>, 533 U.S. 167, 177-79 (2001).

"A federal court claim must be the 'substantial equivalent' of one presented to the state courts if it is to satisfy the 'fairly presented' requirement." <u>Whitehead</u>, 157 F.3d at 387 (citing <u>Picard</u>, 404 U.S. at 275-78).  "This requirement is not satisfied if the petitioner presents new legal theories or new factual claims in his federal application." <u>Id.</u> (citing <u>Nobles</u>, 127 F.3d at 420).  Thus, to exhaust his claims in state court, Bagneris must fairly present the same claims he urges in this federal court to the Louisiana Supreme Court.

12

Bagneris has presented numerous claims to the Louisiana Supreme Court. However, the claims he asserted in the supreme court were not as extensive as those now presented to this federal court. For example, Bagneris's 2002 and 2003 writ applications to the Louisiana Supreme Court do not contain reference to any of the following claims which are now presented to this federal court:  (1) Petitioner was denied effective assistance of counsel when counsel failed to insure the jury was properly charged on the law related to mistaken identification; move for a mistrial; develop a reasonable trial strategy; call defense witnesses; seek writs to the appeal court and/or to preserve objectionable issues for appeal. (2) Counsel was ineffective for failure to object to his illegal arrest, confession, and the co-defendant's statement and to preserve these errors for direct appeal. (3) His constitutional rights were violated when the trial court did not advise him during the multiple bill hearing of his right to remain silent.  As outlined above, these claims were raised in the application for post-conviction relief filed in the state trial court and/or in the Louisiana Fourth Circuit.  However, to accomplish exhaustion, the claims also must have been asserted in the state's highest court, and Bagneris failed to do so.  The Louisiana Supreme Court therefore has not had an opportunity to consider these claims.

Bagneris presents new legal theories and factual claims in this federal application that were not brought to the Louisiana Supreme Court. Bagneris therefore has failed to

13

exhaust available state court remedies as to the claims set forth above. <u>Whitehead</u>, 157 F.3d at 387 (citing <u>Nobles</u>, 127 F.3d at 420). His petition could be dismissed without prejudice to allow him to complete exhaustion of this mixed petition. <u>Pliler v. Ford</u>, 124 S. Ct. 2441, 2447 (2004) (quoting <u>Rose v. Lundy</u>, 455 U.S. 509, 510 (1982)); <u>Whitehead</u>, 157 F.3d at 387. However, because Bagneris's federal petition is time-barred under the AEDPA and must be dismissed with prejudice for that reason, it is unnecessary to require state court exhaustion or to address the procedural default defense asserted by the State.

IV.   STATUTE OF LIMITATIONS

A.   NO WAIVER OF THE LIMITATIONS DEFENSE

The AEDPA's statute of limitations is an affirmative defense, rather than a jurisdictional mandate. <u>Davis v. Johnson</u>, 158 F.3d 806, 810 (5th Cir. 1998), <u>cert. denied</u>, 526 U.S. 1074 (1999). Consequently, the limitations defense may be waived, but the waiver must be <u>express</u> and <u>intentional</u>. <u>Scott v. Johnson</u>, 227 F.3d 260, 263 (5th Cir. 2000) (citing <u>Smith v. Johnson</u>, 216 F.3d 521 (5th Cir. 2000)), <u>cert. denied</u>, 2001 WL 167908 (Feb. 12, 2001); <u>Magouirk v. Phillips</u>, 144 F.3d 348 (5th Cir. 1998).

In the instant case, the State's calculation of the AEDPA tolling periods in its response to the petition are inaccurate under the law. Under a proper calculation, using the precedent set forth below, Bagneris's petition is not timely filed. The State could not

14

have intended to commit error or mistake through its counsel's miscalculations in a response memorandum and thus did not expressly waive its limitations defense by incorrectly concluding that the petition is timely. See Simpkins v. Washington Metropolitan Area Transit Authority, 2 F. Supp.2d 52 (D.D.C. 1998) (calculation error based on mistake did not constitute waiver of limitations defense). Furthermore, this court is not required to accept a waiver, either express or implicit, where it is not judicially warranted. Kunkle v. Dretke, 352 F.3d 980, 989-90 (5th Cir. 2003) (citing McGee v. Estelle, 722 F.2d 1206 (5th Cir. 1984), and Granberry v. Greer, 481 U.S. 129 (1987)); Graham v. Johnson, 94 F.3d 958, 970 (5th Cir. 1996).

For these reasons, I find that the State has not waived the limitations defense through its inaccurate calculation of the AEDPA limitations and tolling periods. Petitioner is hereby placed on notice that the limitations issue is being considered. Fisher v. State, 169 F.3d 295, 301 (5th Cir. 1999); Magouirk, 144 F.3d at 358.

B.     THE PETITION IS UNTIMELY FILED

Section 2244(d)(1) of the federal habeas statute requires that a petitioner bring his Section 2254 claims, among other things not relevant here, within one year from the date of finality of the judgment of conviction.[24]   Bagneris's conviction became final on

---

[24]Specifically, Section 2244(d) provides:
(1)  A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
     (A) the date on which the judgment became final by the conclusion of

15

January 23, 2003, which was 90 days after the Louisiana Supreme Court denied his 2002

writ application after his direct appeal.

Thus, literal application of the statute would bar Bagneris's Section 2254 petition

as of January 23, 2004. As discussed at footnote 23 above, under the federal mailbox

rule, his federal petition is deemed filed on November 19, 2004, which was 11 months

after the deadline imposed by the AEDPA, and it must be dismissed as untimely, unless

the one-year statute of limitations period was interrupted or otherwise tolled in either of

the following two ways recognized in the applicable law.

First, the United States Supreme Court has held that the one-year period of

limitations in Section 2244(d)(1) of the AEDPA may be equitably tolled only when the

petitioner has pursued his rights diligently and there exists rare or extraordinary

circumstances which prevented timely filing. <u>Pace v. DiGuglielmo</u>, 125 S.Ct. 1807,

---

direct review or the expiration of the time for seeking such review;
(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from filing by such State action;
(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this section.

1814 (2005); Fisher v. Johnson, 174 F.3d 710, 713 (5th Cir. 1999), cert. denied, 531 U.S. 1164 (2001); Cantu-Tzin v. Johnson, 162 F.3d 295, 299 (5th Cir. 1998); Davis, 158 F.3d at 810. Equitable tolling is warranted only in situations where the petitioner was actively misled or is prevented in some extraordinary way from asserting his rights. Pace, 125 S. Ct. at 1814-15; Cousin v. Lensing, 310 F.3d 843, 848 (5th Cir. 2002).

Bagneris has not asserted any reason that might constitute exceptional circumstances why the one-year period should be considered equitably tolled, and my review of the record reveals none that might fit the restrictive boundaries of "exceptional circumstances" described in recent decisions. See United States v. Wynn, 292 F.3d 226 (5th Cir. 2002) (tolling warranted when defendant was deceived by attorney into believing that a timely motion to vacate was filed); Coleman v. Johnson, 184 F.3d 398, 402 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000) ("A garden variety claim of excusable neglect does not support equitable tolling."); Fisher, 174 F.3d at 715 (tolling not justified during petitioner's 17-day stay in psychiatric ward, during which he was confined, medicated, separated from his glasses and thus rendered legally blind, and denied meaningful access to the courts); Cantu-Tzin, 162 F.3d at 300 (State's alleged failure to appoint competent habeas counsel did not justify tolling); Davis, 158 F.3d at 808 n.2 (assuming without deciding that equitable tolling was warranted when federal

district court three times extended petitioner's deadline to file habeas corpus petition beyond expiration of AEDPA grace period).

In addition to equitable tolling, however, the AEDPA itself provides for interruption of the one-year limitations period, in stating that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2) (emphasis added). By its plain language, this provision does not create a new, full, one-year term within which a federal habeas petition may be filed at the conclusion of state court post-conviction proceedings. Flanagan, 154 F.3d at 199 n.1. The Supreme Court has clearly described this provision as a tolling statute. Duncan, 533 U.S. at 175-178.

The decisions of the Fifth Circuit and other federal courts cited herein have held that because this statute is a tolling provision, the time during which state court post-conviction proceedings are pending must merely be subtracted from the one-year limitations period:

> [Section] 2244(d)(2) provides that the period during which a properly filed state habeas application is pending must be excluded when calculating the one[-]year period.  Under the plain language of the statute, any time that passed between the time that [petitioner's] conviction became final and the time that his state application for habeas corpus was properly filed must be counted against the one[-]year period of limitation.

Flanagan, 154 F.3d at 199 n.1; accord Brisbane v. Beshears, 161 F.3d 1, 1998 WL 609926 at *1 (4th Cir. Aug. 27, 1998) (Table, Text in Westlaw); Gray v. Waters, 26 F. Supp.2d 771, 771-72 (D. Md. 1998).

For a post-conviction application to be considered "properly filed" within the meaning of Section 2244(d)(2), the applicant must "'conform with a state's applicable procedural filing requirements,'" such as timeliness and location of filing. Pace, 125 S. Ct. at 1812 ("When a postconviction application is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)"); Williams v. Cain, 217 F.3d 303, 306-307 n.4 (5th Cir. 2000) (quoting Villegas v. Johnson, 184 F.3d 467, 469 (5th Cir. 1999)); Smith v. Ward, 209 F.3d 383, 384-85 (5th Cir. 2000).

A matter is "pending" for Section 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'" Carey v. Saffold, 536 U.S. 214, 219-20 (2002); Williams, 217 F.3d at 310 (a matter is "pending" for Section 2244(d)(2) purposes until "'further appellate review [is] unavailable under [Louisiana's] procedures.'")

The phrase "other collateral review" in the statute refers to state court proceedings challenging the pertinent judgment subsequently challenged in the federal habeas petition. Dillworth v. Johnson, 215 F.3d 497, 501 (5th Cir. 2000) (state habeas petition challenging a prior conviction in one county was other collateral review even though

filed as a challenge to a second conviction in a different county); Nara v. Frank, 2001

WL 995164, slip opinion at *5 (3rd Cir. Aug. 30, 2001) (motion to withdraw a guilty

plea is "other collateral review"). A "pertinent judgment or claim" requires that the state

filings for which tolling is sought must have challenged the same conviction being

challenged in the federal habeas corpus petition and must have addressed the same

substantive claims now being raised in the federal habeas corpus petition. Godfrey v.

Dretke, 396 F.3d 681, 686-88 (5th Cir. 2005).

Thus, for the reasons discussed above, the one-year limitations period began to run

in Bagneris's case on January 24, 2003, the day after his conviction became final. The

limitations period ran uninterrupted for 94 days, until April 28, 2003, when he filed his

application for post-conviction relief in the state trial court.

The AEDPA filing period remained tolled until July 18, 2003, which was 30 days

after the Louisiana Fourth Circuit denied the related writ application on June 18, 2003.

From that date, Bagneris had 30 days to file a timely writ application in the Louisiana

Supreme Court, which he did not do, as will be discussed in detail below. The one-year

AEDPA statute of limitations therefore began to run again on July 19, 2003, and did so

for the remaining 261 days until it expired on April 5, 2004. Bagneris had no properly

filed state post-conviction or other collateral review proceedings pending during that

period.

I am aware that Bagneris filed a writ application in the Louisiana Supreme Court during that time period on July 23, 2003. However, as noted above, that filing was untimely under La. S. Ct. R. X§5(a) because it was filed more than 30 days after the Louisiana Fourth Circuit ruled on Bagneris's post-conviction writ application. Under federal habeas corpus law, this untimely filing cannot be considered in the tolling calculation under the AEDPA for the following reasons.

The United States Fifth Circuit Court of Appeals has held that a writ application to the Louisiana Supreme Court which fails to comply with La. S. Ct. R. X§5(a) is not properly filed because it is untimely, and post-conviction review is not pending for purposes of AEDPA's statute of limitations and tolling doctrines. Williams, 217 F.3d at 309-11; see Pace, 125 S. Ct. at 1812. Under this doctrine, Bagneris cannot benefit from any tolling as a result of his improperly filed and untimely writ application in the Louisiana Supreme Court.[25]

For these reasons, the one-year statute of limitations period applicable to Bagneris's federal petition expired on April 5, 2004. Bagneris's federal habeas corpus petition is deemed filed on November 19, 2004, seven months after the expiration of the

---

[25]Under federal habeas corpus law, a state mailbox rule would not be considered or applied to change this conclusion. Coleman, 184 F.3d at 402; Richardson v. Dretke, 85 Fed. Appx. 394, 395 (5th Cir. 2004); Kestler v. Cockrell, 73 Fed. Appx. 690, 691 (5th Cir. 2003).

one-year limitations period allowed under the AEDPA. Thus, Bagneris's petition must be dismissed as untimely under 28 U.S.C. § 2244(d)(1)(A).

## RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that the petition of Terry Bagneris for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE** as time-barred under the AEDPA.

In the alternative, and only if my recommendation concerning the AEDPA limitations period is not accepted, **IT IS RECOMMENDED** that the petition of Terry Bagneris be **DISMISSED WITHOUT PREJUDICE** for failure to exhaust state court remedies.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with

notice that such consequences will result from a failure to object.  <u>Douglass v. United Servs. Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this _____ day of June, 2005.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

23