## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**TERRY BAGNERIS**                                    **CIVIL ACTION**

**VERSUS**                                            **NO.  04-3256**

**N. BURL CAIN, WARDEN, LOUISIANA**          **SECTION "A" (2)**
**STATE PENITENTIARY**

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.  Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary.  See 28 U.S.C. § 2254(e)(2).[1]  For the following reasons, I recommend that the instant petition for habeas corpus relief be **DENIED** and the petition **DISMISSED WITH PREJUDICE**.

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination.  Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

I.    FEDERAL PROCEDURAL BACKGROUND

On January 12, 2005, Terry Bagneris filed a petition for federal habeas corpus

relief seeking relief on the following grounds:[2]

> (1)    Petitioner's constitutional rights were violated when the state trial court refused to admonish the jury regarding the introduction of devastatingly prejudicial indirect hearsay testimony.
> (2)    Petitioner was denied effective assistance of counsel when counsel failed to: (a) adequately investigate the State's evidence prior to trial; (b) present a defense of mistaken identification and insure the jury was properly charged on the law related to mistaken identification; (c) move for a mistrial; (d) develop a reasonable trial strategy; (e) call defense witnesses; (f) investigate and call any alibi witnesses; (g) allow petitioner to testify; (h) seek writs in the appeal court and/or preserve objectionable issues for appeal.
> (3)    Petitioner was illegally seized in violation of the Fourth Amendment when he was taken involuntarily and without probable cause to the police station for questioning and counsel was prejudicial for failure to object to his illegal arrest, confession and the co-defendant's statement and to preserve these errors for direct appeal.
> (4)    Petitioner's constitutional rights were violated when the trial court did not advise him during the multiple bill hearing of his right to remain silent and the court failed to compel the State to meet its burden of proof and counsel failed to object to the presentence investigation report, which led to his sentencing as a multiple offender.
> (5)    The cumulative errors rendered the trial fundamentally unfair for lack of due process and equal protection.

The State filed an opposition response to Bagneris's petition, alleging that

Bagneris's false arrest claim and multiple offender hearing challenge are not exhausted

because the claims were procedurally barred by the state courts.  The State also argues

that the remaining claims are without merit.  On June 2, 2005, I issued a report and

recommendation in which I recommended that Bagneris's federal habeas corpus petition

---

[2]Rec. Doc. No. 2, Petition and Memorandum in Support.

be dismissed with prejudice as time-barred, or alternatively, dismissed without prejudice for failure to exhaust state court remedies as to all of the claims raised.[3]

After review of Bagneris's objections, the District Court agreed that the petition was untimely filed under the law of this circuit and nevertheless applied equitable tolling to allow for federal review of Bagneris's petition.[4]  In doing so, the court otherwise adopted the report and issued an order and judgment dismissing the petition without prejudice for failure to exhaust state court remedies.[5]  The court also denied Bagneris's motion for reconsideration.[6]

Bagneris appealed to the United States Fifth Circuit Court of Appeals.[7]  The Fifth Circuit held, based on the State's apparent waiver, that the only unexhausted claim was the third claim listed above regarding probable cause for the arrest and search.[8]  The court determined that, because the claim was procedurally barred by the state trial court, exhaustion was not an issue, and the claim was procedurally barred from federal review. The matter was remanded to the District Court for consideration of the remaining claims,

---

[3]Rec. Doc. No. 9.

[4]Rec. Doc. No. 13.

[5]Rec. Doc. Nos. 13, 14.

[6]Rec. Doc. Nos. 18, 19.

[7]Rec. Doc. No. 17.

[8]Rec. Doc. No. 33.

including the State's argument that Bagneris's challenge to the multiple offender

proceeding is procedurally barred from federal review.

II.     STATE COURT FACTUAL AND PROCEDURAL BACKGROUND

On October 15, 1999, Bagneris was charged by bill of information in Orleans

Parish with armed robbery and for being a felon in possession of a weapon.[9]   The

Louisiana Fourth Circuit Court of Appeal summarized the facts of the case as follows:

> At approximately 7:00 p.m. on 18 August 1999, police officers received a call concerning a carjacking in the 3300 block of Claremont Street.  Officers responding to the call interviewed the victim, Brandon Allen, who gave a description of the robber.  Another witness to the carjacking gave a similar description.  Later that night, the car, absent its wheels and radio, was recovered on Perdido Street.  Based upon a telephone call, the defendant, Terry Bagneris, became a suspect.  Officers compiled a photographic lineup containing his picture.  The officers showed the lineup to Allen, who chose Bagneris' photo and positively identified him as the man who took the car at gunpoint.
> Allen testified he had parked his mother's car in the 3300 block of Claremont and was standing nearby, talking with his friend's father.  While they were talking, they saw an Acura Legend with dark windows drive by them and then turn the corner.  Soon thereafter, Allen noticed a man he positively identified as the defendant walking toward him from that corner.  As the defendant got closer, he pulled a gun from his waistband.  Allen testified the defendant cocked the gun, placed it against Allen's chest, and ordered Allen to give him the car keys, which were in Allen's hand.  Allen complied, and the defendant ordered him and his friend's father to run to the back of the alley.  As they complied with this order, Allen saw the Acura drive up.  The Acura remained at the scene until the defendant got Allen's mother's car started, and then both cars drove from the scene.  Allen called the police, and officers responded within fifteen minutes.  Allen testified he described the robber as being approximately 6" tall and weighing 190 pounds, with a gold front tooth and a scar on his head.  He testified that a few days later, he and his mother viewed a lineup, and he chose the defendant's photograph.
> On cross-examination, Allen admitted the scar on the defendant's head was visible in court, and he was unsure if he mentioned the scar when he initially

_____

[9]St. Rec. Vol. 1 of 5, Bill of Information, 10/15/99.

described the perpetrator.  He also admitted the defendant's present weight (240 pounds) was much more than he estimated on the date of the offense, and he further admitted that at a pretrial hearing he had estimated the weight of the offender at 160 pounds.  He maintained, however, that the defendant was the man who robbed him.

Lechia Allen, the victim's mother, testified she owned the car taken from the victim.  She testified she had given only the victim permission to use the car that evening.  She stated she was with the victim when he identified the defendant's photo, and the victim chose the photo with no hesitation.

The defense called only one witness, an officer who had earlier testified for the State.  The officer stated he did not recall the victim's having mentioned that the robber had a scar on his head.  In addition, the parties stipulated that the police report did not mention a scar.

State v. Bagneris, 804 So.2d 831, 832-33 (La. App. 4th Cir. 2001); State Record Volume 3 of 5, Fourth Circuit Opinion, 2001-KA-0910, p. 1-2, December 19, 2001.

Bagneris was tried on the armed robbery count before a six-person jury on June 22, 2000 and was found guilty.[10]  Thereafter, on July 17, 2000, the State filed a multiple offender bill charging Bagneris as a third offender.[11]  On October 30, 2000, the State also entered a nolle prosequi as to the felon in possession of a weapon charge.[12]

At a hearing held on January 19, 2001, the state trial court sentenced Bagneris as a multiple offender to serve a term of life imprisonment without benefit of parole,

---

[10]St. Rec. Vol. 1 of 5, Trial Minutes, 6/22/00; St. Rec. Vol. 2 of 5, Trial Transcript, 6/22/00; St. Rec. Vol. 3 of 5, Verdict of the Jury, 6/22/00.

[11]St. Rec. Vol. 2 of 5, Multiple Offender Bill, 7/17/00; St. Rec. Vol. 1 of 5, Minute Entry, 7/18/00.

[12]St. Rec. Vol. 1 of 5, Bill of Information (notation dated 10/30/00), 10/15/99;Minute Entry, 10/30/00.

probation or suspension of sentence.[13]  The court also denied Bagneris's motion to reconsider that sentence.[14]

On direct appeal, Bagneris's counsel raised one ground for relief, alleging that the trial court erred when it failed to admonish the jury after the hearsay testimony of a police officer was presented at trial.[15] On December 19, 2001, the Louisiana Fourth Circuit affirmed Bagneris's conviction, finding that the trial court did not err, and even if it had, the error was harmless.[16]

Bagneris's counsel also filed a writ application in the Louisiana Supreme Court on January 18, 2002, raising two grounds for relief:[17] (1) The hearsay rule and the Confrontation Clause were violated by the admission of the police officer's testimony, and the trial court's failure to admonish the jury was prejudicial. (2) The appellate court confused the harmless error and sufficiency of the evidence standards when addressing

---

[13]St. Rec. Vol. 1 of 5, Multiple Bill Hearing Minutes, 1/19/01; St. Rec. Vol. 3 of 5, Multiple Bill Hearing Transcript, 1/19/01.

[14]St. Rec. Vol. 1 of 5, Multiple Bill Hearing Minutes, 1/19/01; St. Rec. Vol. 2 of 5, Motion to Reconsider Sentence, 1/19/01;

[15]St. Rec. Vol. 3 of 5, Appeal Brief, 2001-KA-0910, 6/28/01.

[16]State v. Bagneris, 804 So.2d at 831; St. Rec. Vol. 3 of 5, 4th Cir. Opinion, 2001-KA-0910, 12/19/01.

[17]St. Rec. Vol. 5 of 5, La. S. Ct. Writ Application, 02-K-0191, p. 3, 1/18/02; St. Rec. Vol. 1 of 5, La. S. Ct. Letter, 2002-K-191, 1/22/02.

the impact of the hearsay on the outcome of trial.  The Louisiana Supreme Court denied the application without reasons on October 25, 2002.[18]

Bagneris's conviction became final 90 days later, January 23, 2003, when he did not file a writ application in the United States Supreme Court.  Ott v. Johnson, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)), cert. denied, 529 U.S. 1099 (2000); U.S. S. Ct. Rule 13(1).

On April 28, 2003, Bagneris filed a pro se application for post-conviction relief in the state trial court raising four grounds:[19]

> (1)    Counsel was ineffective when he failed to: (a) adequately investigate the State's evidence prior to trial; (b) present a defense of mistaken identification and to assure that the jury was properly charged on mistaken identification; (c) move for a mistrial; (d) develop a reasonable trial strategy; (e) call defense witnesses; (f) investigate or call any alibi witnesses; (g) allow petitioner to testify; (h) seek writs to the appeal court and/or to preserve objectionable issues for appeal.
>
> (2)    Petitioner was illegally seized in violation of the Fourth Amendment when he was taken involuntarily and without probable cause to the police station for questioning and counsel was prejudicial for failure to object to his illegal arrest, object to his confession, object to the use of the co-defendant's statements, and preserve these errors for direct appeal.
>
> (3)    His constitutional rights were violated when the trial court did not advise him during the multiple bill hearing of his right to remain silent and did not compel the state to meet its burden of proof and counsel failed to object to the presentence investigation report which led to his sentencing as a multiple offender.
>
> (4)    The cumulative errors rendered the trial fundamentally unfair for lack of due process and equal protection.

---

[18]State v. Bagneris, 827 So.2d 1169 (La. 2002); St. Rec. Vol. 5 of 5, La. S. Ct. Order, 2002-K-0191, 10/25/02.

[19]St. Rec. Vol. 2 of 5, Application for Post-Conviction Relief, 4/28/03.

On May 7, 2003, the state trial court denied the application, finding that the first claim, ineffective assistance of counsel, and the fourth claim, cumulative errors, were without merit.[20]   The court also resolved that the second claim, lack of probable cause, was procedurally defaulted pursuant to La. Code Crim. P. art. 930.4.[21]   The court also held that the third claim, challenging the multiple offender proceeding, was procedurally barred pursuant to La. Code Crim. P. art. 930.3 and State ex rel. Melinie v. State, 665 So.2d 1172 (La. 1996).[22]

Bagneris filed a writ application in the Louisiana Fourth Circuit seeking review of the following claims:[23]

(1)      Counsel was ineffective when he failed to: (a) adequately investigate the State's evidence prior to trial; (b) present a defense of mistaken identification and to assure that the jury was properly charged on mistaken identification; (c) develop a reasonable trial strategy; (d) investigate or call any alibi witnesses; (e) allow petitioner to testify.

(2)      Petitioner was illegally arrested in violation of the Fourth Amendment and counsel was prejudicial for failure to object to his illegal arrest to preserve the issue for direct appeal.

(3)      He was improperly adjudicated a multiple offender because the state failed to meet its burden of proof and counsel failed to object to the presentence investigation report which led to his sentencing as a multiple offender.

(4)      The cumulative errors rendered the trial fundamentally unfair for lack of due process and equal protection.

---

[20]St. Rec. Vol. 1 of 5, Trial Court Judgment, 5/7/03.

[21]Id.

[22]Id.  In Melinie, the Louisiana Supreme Court, relying on La. Code Crim. P. Art. 930.3, ruled that claims of errors in sentencing which should be raised on direct appeal were not proper grounds for post-conviction relief.

[23]St. Rec. Vol. 4 of 5, 4th Cir. Writ Application, 2003-K-0998, 6/4/03.

The appellate court denied the writ application on June 18, 2003, finding no error in the trial court's ruling.[24]

On April 12, 2001, Bagneris filed a pro se writ application in the Louisiana Supreme Court seeking review of the following claims:[25]

(1)    Counsel was ineffective when he failed to: (a) adequately investigate the State's evidence prior to trial; (b) present a defense of mistaken identification; (c) investigate and call alibi witnesses; (d) allow petitioner to testify.
(2)    Petitioner was illegally arrested in violation of the Fourth Amendment.
(3)    He was improperly adjudicated a multiple offender because the state failed to meet its burden of proof and counsel failed to object to the presentence investigation report which led to his sentencing as a multiple offender.
(4)    The cumulative errors rendered the trial fundamentally unfair for lack of due process and equal protection.

The Louisiana Supreme Court denied the application without reasons on August 20, 2004.[26]

## III.   STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254.  The AEDPA went into effect on April 24, 1996[27] and

---

[24]St. Rec. Vol. 4 of 5, 4th Cir. Order, 2003-K-0998, 6/18/03.

[25]St. Rec. Vol. 5 of 5, La. S. Ct. Writ Application, 03-KH-2041, 7/23/03; St. Rec. Vol. 1 of 5, La. S. Ct. Letter, 2003-KH-2041, 7/23/03.

[26]State ex rel. Bagneris v. State, 882 So.2d 561 (La. 2004); St. Rec. Vol. 5 of 5, La. S. Ct. Order, 2003-KH-2041, 8/20/04.

[27]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir.

9

applies to habeas petitions filed after that date.  Flanagan v. Johnson, 154 F.3d 196, 198

(5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)).  The AEDPA therefore

applies to Bagneris's petition, which, for reasons discussed below, is deemed filed in a

federal court on January 12, 2005.[28]

The threshold questions in habeas review under the amended statute are whether

the petition is timely and whether the claims raised by the petitioner were adjudicated on

the merits in state court; i.e., the petitioner must have exhausted state court remedies and

must not be in "procedural default" on a claim.  Nobles v. Johnson, 127 F.3d 409, 419-20

(5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State argues that Bagneris's fourth claim, challenging the multiple offender

proceeding, is in procedural default and is barred from federal review.[29]

_____

1992).

[28]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas
corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners
acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for
delivery to the court is considered the time of filing for limitations purposes. Coleman v. Johnson, 184
F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378
(5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995).  Bagneris's petition was filed
by the clerk of court on January 12, 2005, when the filing fee was paid.  Bagneris dated his signature on
the petition on November 19, 2004.  This is the earliest date on which he could have delivered the
pleadings to prison officials for mailing.  The fact that he paid the filing fee does not alter the application
of the federal mailbox rule to his pro se petition.  See Cousin v. Lensing, 310 F.3d 843, (5th Cir. 2002)
(mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing Spotville,
149 F.3d at 374).

[29]The State also argued that the third claim, lack of probable cause, was also in procedural
default.  That issue was resolved by the United States Fifth Circuit and is not addressed herein.  Rec.
Doc. No. 33.

IV.   PROCEDURAL DEFAULT

Generally, a federal court will not review a question of federal law decided by a state court if the decision of that state court rests on a state ground that is both independent of the federal claim and adequate to support that judgment.  Coleman v. Thompson, 501 U.S. 722, 731-32 (1991); Glover v. Cain, 128 F.3d 900, 902 (5th Cir. 1997); Amos v. Scott, 61 F.3d 333, 338 (5th Cir. 1995) (citing Harris v. Reed, 489 U.S. 255, 260, 262 (1989)).  This "independent and adequate state law" doctrine applies to both substantive and procedural grounds and affects federal review of claims that are raised on either direct or habeas review.  Amos, 61 F.3d at 338.

Procedural default does not bar federal court review of a federal claim raised in a habeas petition unless the last state court to render a judgment in the case has clearly and expressly indicated that its judgment is independent of federal law and rests on a state procedural bar.  Harris, 489 U.S. at 263; Glover, 128 F.3d at 902.  When the last state court judgment does not indicate whether it is based on procedural default or the merits of a federal claim, it is presumed that the court relied upon the same grounds as the last reasoned state court opinion.  Ylst v. Nunnemaker, 501 U.S. 797, 802 (1991).

The record demonstrates that Bagneris's fourth claim, challenging the multiple offender proceeding, is procedurally barred from federal habeas corpus review for the following reasons.  The last reasoned decision on the issue was that of the state trial

11

court, which dismissed the claim and cited La. Code Crim. P. art. 930.3 and <u>Melinie</u> as the procedural bases for denial of relief.

A.      <u>INDEPENDENT AND ADEQUATE</u>

For the foregoing state law procedural bar to prevent review by this federal habeas court, the bar must be independent and adequate.   A procedural restriction is "independent" if the state court's judgment "clearly and expressly" indicates that it is independent of federal law and rests solely on a state procedural bar.  <u>Amos</u>, 61 F.3d at 338.  To be "adequate," the state procedural rule must be strictly or regularly followed and evenhandedly applied to the majority of similar cases.  <u>Glover</u>, 128 F.3d at 902.

The state trial court relied upon La. Code Crim. P. art. 930.3 and <u>Melinie</u>, which clearly indicates that Bagneris's claim related to the multiple bill proceedings, including the quality of his representation in that proceeding, was barred from review because it was not appropriately raised on post-conviction review.

This court has repeatedly held that both <u>Melinie</u> and La. Code Crim. P. art. 930.3 are independent and adequate state grounds for dismissal which bar review by the federal courts in a habeas corpus proceeding.  <u>See, e.g.</u>, <u>Neal v. Kaylo</u>, No. 01-2211, 2001 WL 1195879 (E.D. La. Oct. 10, 2001) (Duplantier, J.) (Art. 930.3 and <u>State ex rel. Melinie</u> are independent and adequate); <u>Leonard v. Hubert</u>, No. 00-0511, 2001 WL 333123 (E.D. La. Apr. 4, 2001) (Schwartz, J.) (same); <u>Marshall v. Hubert</u>, No. 00-0334, 2000 WL

1059820 (E.D. La. July 31, 2000) (Duval, J.) (same); <u>Ardis v. Cain</u>, No. 99-1862, 1999 WL 997497 (E.D. La. Oct. 29, 1999) (Berrigan, J.) (same).

I find that the bar imposed under La. Code Crim. P. art. 930.3 and <u>Melinie</u> is also independent and adequate to bar review of the merits of Bagneris's claim by this federal habeas corpus court.

B.   <u>CAUSE AND PREJUDICE</u>

A federal habeas petitioner may be excepted from the procedural default rule only if he can show "cause" for his default and "prejudice attributed thereto," or demonstrate that the federal court's failure to review the defaulted claim will result in a "fundamental miscarriage of justice."  <u>Glover</u>, 128 F.3d at 902 (citing <u>Coleman</u>, 501 U.S. at 731-32); <u>Amos</u>, 61 F.3d at 338-39 (citing <u>Harris</u>, 489 U.S. at 262; <u>Engle v. Isaac</u>, 456 U.S. 107, 129 (1982)).

To establish cause for a procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded his efforts to comply with the state's procedural rule.  <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986).  The mere fact that petitioner or his counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default.  <u>Id</u>. at 486.

In this case, Bagneris has not offered any cause for the default which would excuse the procedural bar imposed by the Louisiana courts.  My review of the record does not

support a finding that any factor external to the defense prevented Bagneris from raising this claim in a procedurally proper manner. The record also does not reflect any action or inaction on the part of the State which prevented him from doing so.

"The failure to show 'cause' is fatal to the invocation of the 'cause and prejudice' exception, without regard to whether 'prejudice' is shown." Hogue, 131 F.3d 466, 497 (5th Cir. 1997) (citing Engle, 456 U.S. at 134 n.43). Having failed to show an objective cause for his default, the court need not determine whether prejudice existed, and petitioner has not alleged any actual prejudice. Ratcliff v. Estelle, 597 F.2d 474 (5th Cir. 1979) (citing Lumpkin v. Ricketts, 551 F.2d 680, 681-82 (5th Cir. 1977)).

Bagneris's fourth claim, challenging the multiple offender proceeding, is therefore procedurally barred from review by this federal habeas corpus court. See Trest v. Whitley, 94 F.3d 1005, 1008 (5th Cir. 1996) (habeas review precluded when petitioner neglected to allege actual prejudice and cause of failure to comply with state procedural rule concerning time restriction on filing for state post-conviction relief), vacated on other grounds, 522 U.S. 87 (1998).[30]

## C.   FUNDAMENTAL MISCARRIAGE OF JUSTICE

Bagneris may avoid this procedural bar only if a fundamental miscarriage of justice will occur if the merits of his claim are not reviewed. Hogue, 131 F.3d at 497

---

[30]The Supreme Court vacated the Fifth Circuit's opinion on grounds that a court of appeals is not required to raise the procedural default argument sua sponte. Id.

(citing <u>Sawyer v. Whitley</u>, 505 U.S. 333, 339 (1992)).  To establish a fundamental miscarriage of justice, petitioner must provide this court with evidence that would support a "colorable showing of factual innocence." <u>Kuhlmann v. Wilson</u>, 477 U.S. 436, 454 (1986); <u>accord</u> <u>Murray</u>, 477 U.S. at 496; <u>Glover</u>, 128 F.3d at 902.  To satisfy the factual innocence standard, petitioner must establish a fair probability that, considering all of the evidence now available, the trier of fact would have entertained a reasonable doubt as to the defendant's guilt.  <u>Campos v. Johnson</u>, 958 F. Supp. 1180, 1195 (W.D. Tx. 1997) (footnote omitted); <u>Nobles</u>, 127 F.3d at 423 n. 33 (actual innocence factor requires a showing by clear and convincing evidence that "but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.")  When the petitioner has not adequately asserted his actual innocence, his procedural default cannot be excused under the "fundamental miscarriage of justice" exception.  <u>Glover</u>, 128 F.3d at 903.

Bagneris has presented nothing that might indicate, and the record contains nothing that suggests, his actual innocence on the underlying conviction.  His claims address alleged procedural failings in the underlying criminal proceedings, not his actual innocence.  He presents no evidence or argument of innocence that was not already presented to and resolved by the jury and the state trial court.  For these reasons, Bagneris has failed to overcome the procedural bar to his claims.  Bagneris's fourth

claim, challenging the multiple offender proceeding, is procedurally barred and must be dismissed with prejudice for that reason.

V.     STANDARDS OF MERITS REVIEW

Amended 28 U.S.C. §§ 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law in federal habeas corpus proceedings.  Nobles, 127 F.3d at 419-20 (citing 28 U.S.C. § 2254(b) and (c)).

Determinations of questions of fact by the state court are "presumed to be correct . . . and we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'"  Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28 U.S.C. § 2254(d)(2)), cert. denied, 532 U.S. 1039 (2001).  The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption.  28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference, unless the state court's decision "'was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent.]'"  Penry v. Johnson, 215 F.3d 504, 507 (5th Cir. 2000) (quoting Miller v. Johnson, 200 F.3d 274, 280-81 (5th Cir.), cert. denied, 531 U.S. 849 (2000)), aff'd in part, rev'd in part on other grounds, 532 U.S. 782 (2001); Hill, 210

16

F.3d at 485.  The United States Supreme Court has clarified the Section 2254(d)(1)

standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ
> if the state court arrives at a conclusion opposite to that reached by this
> Court on a question of law or if the state court decides a case differently
> than this Court has on a set of materially indistinguishable facts.  Under the
> "unreasonable application" clause, a federal habeas court may grant the
> writ if the state court identifies the correct governing legal principle from
> this Court's decisions but unreasonably applies that principle to the facts
> of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 405-06, 412-13 (2000);  Penry, 532 U.S. at 792-93;

Hill, 210 F.3d at 485.  "'A federal habeas court may not issue the writ simply because

that court concludes in its independent judgment that the state court decision applied [a

Supreme Court case] incorrectly.'"  Price v. Vincent, 538 U.S. 634, 641 (2003) (quoting

Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)) (brackets in original); Bell v. Cone,

535 U.S. 685, 699 (2002).  Rather, under the "unreasonable application" standard, "the

only question for a federal habeas court is whether the state court's determination is

objectively unreasonable."  Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002), cert.

denied, sub nom, Neal v. Epps, 537 U.S. 1104 (2003). The burden is on the petitioner to

show that the state court applied the precedent to the facts of his case in an objectively

unreasonable manner.  Price, 538 U.S. at 641 (quoting Woodford, 537 U.S. at 24-25);

Wright v. Quarterman, 470 F.3d 581, 585 (5th Cir. 2006).

## VI.   PREJUDICIAL HEARSAY

Bagneris alleges that the state trial court erred when it failed to admonish the jury regarding the use of hearsay testimony.  Specifically, Bagneris claims that Detective David Hunter testified as to how he developed Bagneris as a suspect.  Bagneris further claims that Hunter testified that a telephone call had been received, which led investigators to Bagneris.  Bagneris contends that the jury was never told that the actual phone call was made to a bail bondsman, who supplied information to the police.  He also alleges that the hearsay testimony impacted the jury's ability to evaluate the inconsistent eyewitness descriptions made by witnesses before and during trial.

Bagneris complains that his counsel's objection to the hearsay was overruled and that the state trial court later erred when it denied counsel's request to admonish the jury regarding Hunter's testimony.  Bagneris argues that Hunter's testimony was hearsay and that the trial court erred in permitting it to be heard by the jury without a limiting instruction or admonishment.

This issue was raised in the Louisiana Fourth Circuit on direct appeal.  After evaluating the trial testimony and considering the identification evidence, the court held that Hunter's testimony was not inadmissible hearsay and that the Confrontation Clause was not violated.[31]  The court also held that the trial court did not err in overruling the

_____

[31]State v. Bagneris, 804 So.2d at 835; St. Rec. Vol. 3 of 5, 4th Cir. Opinion, 2001-KA-0910, p. 5, 12/19/01.

objection to Hunter's testimony or by refusing to admonish the jury.  Alternatively, the court resolved that, even if the testimony were hearsay and the trial court erred, it was harmless error, since the officer's testimony did not affect the verdict, in light of the other evidence of guilt.  This was the last reasoned decision on the issue.  See, Ylst, 501 U.S. at 802.

Habeas corpus review is limited to questions of constitutional dimension, and federal courts generally do not review the admissibility of evidence under state law. Jernigan v. Collins, 980 F.2d 292, 298 (5th Cir. 1992).  States are free to implement procedures regarding the admission of evidence, provided that those procedures do not infringe on a constitutional guarantee.  Burgett v. State of Texas, 389 U.S. 109 (1967). Therefore, federal courts do not sit to review the propriety of state court evidentiary rulings, unless the proceedings violate due process such that the violation renders the criminal proceeding fundamentally unfair.  Lisenba v. People of the State of California, 314 U.S. 219, 236-37 (1941); Peters v. Whitley, 942 F.2d 937, 940 (5th Cir. 1991) (habeas review is proper only to determine whether a state trial judge's error is so extreme as to render the trial fundamentally unfair or violate an explicit constitutional right).

To obtain relief, the petitioner must show that the state trial court's error, if any, had a "substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 623 (1993).  The petitioner must show that "there

is more than a mere reasonable possibility that [the error] contributed to the verdict. It must have had a substantial effect or influence in determining the verdict." Woods v. Johnson, 75 F.3d 1017, 1026 (5th Cir.1996) (emphasis omitted). In determining harm based on inadmissible testimony, the court should consider (1) the importance of the witness's testimony; (2) whether the testimony was cumulative, corroborated, or contradicted; and (3) the overall strength of the prosecution's case. Sherman v. Scott, 62 F.3d 136, 142 n.6 (5th Cir.1995). Bagneris has made no such showing.

As noted by the state courts, Detective Hunter's testimony regarding how Bagneris became a suspect was brief:[32]

> Q.    Could you please relate to the jury the reason behind developing him as a suspect?
> A.    A phone call was received. And through the course of the investigation we learned that that phone call had come from Belfast Street. I think it's 8703, but I might be wrong in the numbers. We ran a check through what we call the police department motion computer, where we can run addresses. And during the course of running those addresses, I ran 8703 Belfast and learned that Terry Bagneris lived there.

---

[32]St. Rec. Vol. 2 of 5, Trial Transcript, p. 7, 6/22/00.

After this statement, defense counsel objected on the grounds of hearsay. The trial court overruled the objection.[33] The court later refused to reconsider and denied the request to admonish the jury.[34]

Under Louisiana law, hearsay is defined by La. Code Evid. art. 801(C) as "a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted." Hearsay is generally inadmissible at trial. La. Code Evid. art. 802. However, La. Code Evid. arts. 803 and 804 provide many exceptions to the hearsay rule, none of which are relevant to this discussion.

As noted by the state court, nothing in Hunter's testimony relayed any part of the telephone conversation. Instead, Hunter merely stated that a telephone call led to the discovery of the address from which the call was made, which in turn led to Bagneris.

This information, that Bagneris was a viable suspect, was corroborated and expounded upon by the identification and eyewitness testimony presented to the jury, which unquestionably pointed to Bagneris. For example, the victim and an eyewitness provided similar physical descriptions of the perpetrator to the police, which fit

---

[33]_Id._

[34]_Id._, pp. 35-39.

Bagneris's description.[35]   Based on that information, a photographic line-up was compiled.[36]   The victim identified Bagneris from the line-up.[37]

Bagneris has not established that Hunter's testimony was inadmissible hearsay. Furthermore, in light of the witness testimony, Bagneris has not established that Hunter's testimony was important to the jury's verdict.   He therefore has not established a constitutional error by the trial court in allowing the testimony at trial or in failing to admonish the jury where hearsay was not an issue.

The state court's denial of relief was not contrary to or an unreasonable application of Supreme Court law.   Bagneris is not entitled to relief on this claim.

VII.   <u>INEFFECTIVE ASSISTANCE OF COUNSEL</u>

Bagneris alleges that he was denied effective assistance of counsel when his trial counsel failed to: (a) adequately investigate the State's evidence prior to trial; (b) present a defense of mistaken identification and insure the jury was properly charged on the law related to mistaken identification; (c) move for a mistrial; (d) develop a reasonable trial strategy; (e) call defense witnesses; (f) investigate and call any alibi witnesses; (g) allow petitioner to testify; (h) seek writs to the appeal court and/or preserve objectionable issues for appeal.   Bagneris raised ineffective assistance of counsel in his state

---

[35]<u>Id</u>., at pp. 11, 13, 19, 20.

[36]<u>Id</u>., at p. 8.

[37]<u>Id</u>., at pp. 9, 11, 16.

application for post-conviction relief.  In the last reasoned decision, the state trial court denied relief on this claim, finding that the record did not support a finding that counsel was ineffective.  See Ylst, 501 U.S. at 802.

The issue of ineffective assistance of counsel is a mixed question of law and fact. Motley v. Collins, 18 F.3d 1223, 1226 (5th Cir. 1994).  Thus, the question before this court is whether the state courts' denial of relief was contrary to, or an unreasonable application of, United States Supreme Court precedent.

In Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel in which the petitioner must prove deficient performance and resulting prejudice. Strickland, 466 U.S. at 697.  The Supreme Court first held that "the defendant must show that counsel's representation fell below an objective standard of reasonableness."  Id. at 687-88.  Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694; United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999).

In deciding ineffective assistance of counsel claims, this court need not address both prongs of the conjunctive Strickland standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test.  Kimler, 167 F.3d at 893.  A habeas corpus petitioner "need not show that 'counsel's deficient conduct more likely than not altered the outcome in the case.'  It is not enough, however, under

23

<u>Strickland</u> 'that the errors had some conceivable effect on the outcome of the proceeding.'" <u>Motley</u>, 18 F.3d at 1226 (quoting <u>Strickland</u>, 466 U.S. at 693).

On federal habeas review, scrutiny of counsel's performance "must be highly deferential," and the court will "indulge a strong presumption that strategic or tactical decisions made after an adequate investigation fall within the wide range of objectively reasonable professional assistance." <u>Moore v. Johnson</u>, 194 F.3d 586, 591 (5th Cir. 1999) (citing <u>Strickland</u>, 466 U.S. at 689-90). In assessing counsel's performance, a federal habeas court must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time of trial. <u>Strickland</u>, 466 U.S. at 689; <u>Neal</u>, 286 F.3d at 236-37; <u>Clark v. Johnson</u>, 227 F.3d 273, 282-83 (5th Cir. 2000), <u>cert. denied</u>, 531 U.S. 1167 (2001). "A court must indulge a 'strong presumption' that counsel's conduct falls within the wide range of reasonable professional assistance because it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight." <u>Bell</u>, 535 U.S. at 697 (citing <u>Strickland</u>, 466 U.S. at 689).

This court must apply the "strong presumption" that counsel's strategy and defense tactics fall "within the wide range of reasonable professional assistance." <u>Strickland</u>, 466 U.S. at 690. Federal courts have consistently recognized that tactical decisions when supported by the circumstances are objectively reasonable and do not

24

amount to unconstitutionally deficient performance.  Lamb v. Johnson, 179 F.3d 352, 358 (5th Cir. 1999), cert. denied, 528 U.S. 1013 (1999) (citing Rector v. Johnson, 120 F.3d 551, 564 (5th Cir. 1997) and Mann v. Scott, 41 F.3d 968, 983-84 (5th Cir. 1994)).  Federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise.  Strickland, 466 U.S. at 689; Moore, 194 F.3d at 591.  The burden is on petitioner to demonstrate that counsel's strategy was unreasonable.  Id.

(A)   FAILURE TO INVESTIGATE ADEQUATELY STATE'S EVIDENCE; PRESENT A DEFENSE OF MISTAKEN IDENTIFICATION AND INSURE THE JURY WAS CHARGED; MOVE FOR A MISTRIAL; DEVELOP A REASONABLE TRIAL STRATEGY[38]

Bagneris alleges that had his trial counsel properly investigated the case, he would have known that the investigation was triggered by a third-party telephone call and that the victim's description of the perpetrator did not match his own.  This, he argues, would have led counsel to present a defense of misidentification, about which the jury could have properly been charged.  Bagneris also claims that counsel should have moved for a mistrial, though he does not indicate why, and that counsel should have challenged the suggestiveness of the identification process.  Finally, he contends that, had counsel properly investigated these matters, he could have presented a reasonable trial strategy.

---

[38]Bagneris has presented the court with repetitive and overlapping arguments in connection with the ineffective assistance of counsel claims.  For purposes of this report, I have addressed related claims and arguments together, where appropriate.

A lawyer has a duty "to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Strickland, 466 U.S. at 690-91. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." Id. at 689-90. In the instant case, the record does not support Bagneris's conclusion that his counsel acted deficiently in his investigation and presentation of the defense.

With specific focus on the identification process, the record reflects that Bagneris's counsel filed a pretrial motion to suppress the identification. After a hearing held on December 2, 1999, the state trial court denied the motion to suppress and also found probable cause to proceed.[39] Bagneris's suggestion that counsel did nothing to challenge the identification process before trial is factually inaccurate.

Furthermore, review of the trial transcript reflects that defense counsel vigorously cross-examined the State's witnesses regarding contradictions in the witness descriptions and the suggestiveness of the photographic line-up shown to the victim. In fact, counsel's efforts track the factors of testing the reliability of an identification. As referenced and cited by Bagneris, those factors include: (1) the opportunity of the witness to view the subject; (2) the witness's degree of attention; (3) the accuracy of the description; (4) the witness's level of certainty; (5) the elapsed time between the crime and the identification; and (6) the corrupting influence of the suggestive identification

---

[39]St. Rec. Vol. 1 of 5, Minute Entry, 12/2/99.

itself.  Manson v. Brathwaite, 432 U.S. 98, 114-16 (1977) (citing Neil v. Biggers, 409

U.S. 188, 199 (1972)); Passman v. Blackburn, 652 F.2d 559, 570-71 (5th Cir. 1981);

Herrera v. Collins, 904 F.2d 944, 946 (5th Cir. 1990).

Counsel thoroughly questioned Detective Kenneth Quetant about the description

of the perpetrator which appeared in the police report.  Counsel elicited testimony that,

while the police obtained descriptions from two people, only one composite description

was included in the police report.[40]  The detective also admitted on cross-examination

that, while he did not write the reports, the reports did not reflect that two descriptions

were given.[41]  On direct examination, the officer had already indicated that the

description did not reference facial features.[42]

When questioning the victim, Brandon Allen, counsel tested Allen's recollection

with specific focus on the perpetrator's weight and facial scar.  Counsel questioned him

as to why the weight estimate had changed from pretrial to trial and why the reference

to the scar had not been given to police initially.[43]  In doing so, counsel brought to the

jury's attention that Allen may have added the scar to his description after he saw

---

[40]St. Rec. Vol. 2 of 5, Trial Transcript, pp. 12-13, 6/22/00.

[41]Id., at p. 13.

[42]Id., at p. 11.

[43]Id., at pp. 23-24; 26.

Bagneris in court.[44]  He also suggested that Allen's estimate of the perpetrator's weight had changed from 150 to 190 pounds, and that Bagneris weighed about 240 pounds.[45] Counsel's tactics were successful enough that the prosecutor eventually stipulated that the police reports did not mention that the perpetrator had a scar.[46]

Defense counsel also delved into the possibility that the detectives swayed Allen by suggesting before the photographic line-up that the man they suspected was either already arrested or that his picture was in the line-up.[47]  Counsel continued to question Allen thoroughly about his opportunity to see the perpetrator and recall his appearance.[48]

The record demonstrates that counsel had a certain strategy to present to the jury that Allen's description of the perpetrator did not describe Bagneris and that his selection of Bagneris's picture from the line-up was questionable.  Bagneris's contention to the contrary is without record support.  Instead, the record supports a finding that counsel did exactly what Bagneris claims he did not do; he challenged the identification and the description and assured that those issues were presented in defense of the charge.

---

[44]Id., at pp. 25-26, 27.

[45]Id., at p. 26.

[46]Id., at p. 33-34.

[47]Id., at pp. 27-28, 33.

[48]Id., at pp. 28-29.

The record demonstrates that counsel, through his questioning, challenged each of the factors outlined above in testing the reliability of the identification.  He tested the witness's memory, his ability to see the perpetrator, his ability to recall his features at the time of the incident, the line-up and the alleged contradictions in the descriptions given to police and in court.

The fact that this defense was not successful does not stand alone to establish deficient performance.  <u>Martinez v. Dretke</u>, 99 Fed. Appx. 538, 543 (5th Cir. 2004).  "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." <u>Strickland</u>, 466 U.S. at 689 (citations omitted).  Considering counsel's performance, the state court's denial of relief on this issue was neither contrary to, or an unreasonable application of, Supreme Court precedent.  Bagneris is not entitled to relief on this claim.

(B)   <u>FAILURE TO CALL DEFENSE WITNESSES AND TO INVESTIGATE AND CALL ALIBI WITNESSES</u>

Bagneris claims that his counsel failed to investigate and call defense and alibi witnesses.  He alleges that he provided information and names to counsel and counsel did not contact the witnesses to pursue a mistaken identity defense.

As a general rule, "'[c]omplaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative.'"  <u>Graves v.</u>

Cockrell, 351 F.3d 143, 156 (5th Cir. 2003) (quoting Buckelew v. United States, 575 F.2d 515, 521 (5th Cir. 1978)).  Thus, where the only evidence of an uncalled witness's testimony comes from the defendant, federal courts are reluctant to find ineffective assistance on habeas review.  Schwander v. Blackburn, 750 F.2d 494, 500 (5th Cir.1985).

Bagneris has failed to identify these uncalled witnesses, and he has not submitted anything to establish the substance of their expected testimony.  He has presented nothing but his own self-serving allegation that counsel should have done more to make the mistaken identity defense successful.

As discussed above, counsel presented a defense of mistaken identification to the jury through his cross-examination of the State's witnesses.  Bagneris has not outlined what other investigation could have been done or how any unidentified witnesses would have contributed to his defense.

Bagneris has failed to establish that counsel was deficient or that his actions were prejudicial.  The denial of relief was neither contrary to nor an unreasonable application of Supreme Court law.  Bagneris is not entitled to relief on this claim.

(C)   FAILURE TO ALLOW PETITIONER TO TESTIFY

Bagneris alleges that his lawyer ignored his desire to take the stand and testify on his own behalf.  The United States Court of Appeals for the Fifth Circuit has held that the decision not to place a defendant on the stand is a strategic decision which seldom will support a challenge of ineffective assistance of counsel.  See Jones v. Cain, 227 F.3d 228,

231 (5th Cir. 2000) (citing <u>Robison v. Johnson</u>, 151 F.3d 256 (5th Cir. 1998), <u>cert. denied</u>, 526 U.S. 1100 (1999)).  This type of tactical decision, when supported by the circumstances, is objectively reasonable and does not amount to unconstitutionally deficient performance.  <u>Lamb</u>, 179 F.3d at 358.

The record in this case shows that Bagneris had a prior criminal record, which eventually led to the multiple bill.  A past criminal record would probably be disclosed to the jury, and counsel's decision not to place a repeat felon on the stand was reasonable under the circumstances.

Federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise.  <u>Strickland</u>, 466 U.S. at 689; <u>Moore</u>, 194 F.3d at 591.  Bagneris has not met this burden.  The state courts' denial of relief was not contrary to, or an unreasonable application of, Supreme Court precedent.  Bagneris is not entitled to relief on this claim.

(D)     <u>FAILURE TO SEEK WRITS TO APPEAL COURT AND/OR TO PRESERVE OBJECTIONABLE ISSUES FOR APPEAL</u>

Bagneris has offered nothing in support of this claim.  He merely suggests that, without counsel, a defendant cannot "secure his other rights."  Bagneris has pointed to no part of the record or other ruling to which counsel should have lodged an objection and has not identified on what basis trial counsel should have pursued review in the appellate court.  The record clearly demonstrates that counsel lodged objections during

trial, including repeated objections to testimony arising from Detective Hunter's reference to the telephone call which led to the location of Bagneris as a suspect. The record also establishes that Bagneris obtained appellate review from the Louisiana Fourth Circuit, which affirmed his conviction after considering the issue raised by his appointed counsel and after conducting its own review for errors patent on the record.

Bagneris therefore has failed to specify a particular deficiency in counsel's performance or a prejudicial impact on the trial. The denial of relief on this ambiguous claim was neither contrary to, nor an unreasonable application of, Supreme Court precedent. Bagneris is not entitled to relief on this claim.

## VIII.   CUMULATIVE ERRORS

Bagneris argues that the claims he raises in his petition have the cumulative effect of having denied him due process and a fair trial. Bagneris raised this claim on post-conviction review in the state trial court, which denied relief because Bagneris's post-conviction claims were without merit, rendering his cumulative error claim to be without merit.

This court can only grant relief where it finds a constitutional error or violation of due process which would render the trial unfair. Lisenba, 314 U.S. at 236-37; Peters, 942 F.2d at 940. As outlined above, Bagneris has failed to establish any denial of a

constitutional right through the claims properly brought to and reviewed by this court.[49]

Having found no merit to the claims, I cannot conclude that Bagneris has established a

denial of due process which rendered his trial fundamentally unfair or his conviction

unconstitutional.   The denial of relief on this claim was neither contrary to, nor an

unreasonable application of, Supreme Court law.

## **RECOMMENDATION**

**IT IS THEREFORE RECOMMENDED** that the petition of Terry Bagneris for

issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DENIED** and

**DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions,

and recommendation in a magistrate judge's report and recommendation within ten (10)

days of entry of this order. (10) days of entry of this order. (10) days after being served

with a copy shall bar that party, except upon grounds of plain error, from attacking on

appeal the unobjected-to proposed factual findings and legal conclusions accepted by the

district court, provided that the party has been served with notice that such consequences

---

[49]He has presented two claims which are in procedural default and are not properly before this court.

will result from a failure to object.  <u>Douglass v. United Servs. Auto. Ass'n</u>, 79 F.3d 1415,

1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this _____13th_____ day of March, 2008.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

34